# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SHARON ELAINE CLIFFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21CV802 HEA |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff Sharon Elaine Clifford for disability and disability insurance benefits under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401-434. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff applied for disability and disability insurance benefits on July 23,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2019. A hearing was held on September 29, 2020, in front of an Administrative Law Judge (ALJ) via telephone due to the Coronavirus Disease 2019 Pandemic. In an opinion issued on October 15, 2020, the ALJ determined that Plaintiff was not under a disability at any time from her amended alleged onset date of July 31, 2018. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. In her decision, the ALJ found Plaintiff had the severe impairments of multiple sclerosis (MS) and migraines. The ALJ noted Plaintiff's non-severe impairments, including depression. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> …[Plaintiff] cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs. [She] is limited to no more than frequent balancing on slippery or erratically moving surfaces and she can engage in frequent handling and fingering. She cannot work at unprotected heights, around moving mechanical parts or other such hazards, and she can have no concentrated exposure to extreme heat or humidity.
>
> Based on vocational expert testimony, the ALJ found Plaintiff could perform

her past relevant work as a utilization review coordinator, which does not require the performance of work-related activities precluded by Plaintiff's RFC (20 C.F.R. § 404.1565).

Plaintiff filed a timely Request for Review of Hearing Decision, and the Appeals Council denied the request for review. Plaintiff has exhausted all administrative remedies. The decision of the ALJ stands as the final decision of the Commissioner.

### **Hearing Testimony**

Plaintiff, who was represented by a non-attorney at her hearing before the ALJ, testified that she lives with her spouse in a house. Plaintiff testified her most recent job was July 31, 2018, and she worked for Air Evac EMS since at least 2005, performing different jobs over the years as a flight nurse, medic link nurse, resource utilization nurse and nurse resource. She worked at a standing workstation for the last two years of her job because she couldn't sit, and the most weight she had to lift and carry was approximately ten pounds. Prior to Enterprise Holdings, she worked as an accounting coordinator for Macy's.

Plaintiff testified that she has difficultly using her hands, and she experiences numbness and has severe tremors. The numbness started when she was diagnosed with MS and the tremors have progressed over the years. Plaintiff testified she saw Dr. Ninichuck and Dr. Singer, her neurologist, back in June 2018

because her symptoms were getting worse. She confirmed she was not on any medications at that time. Then on July 31, 2018, her company let her go because they told her she was not able to keep up with her position. She testified she couldn't work anymore because it was hard for her to follow processes and she couldn't remember things she had already completed or things she still needed to do.  She knew then that not taking medications and denying she had MS would not work anymore as her tremors had increased to the point that she had difficultly using her hands to do things like opening jars and cutting up her food. She had to start using a cane for balance.  She experiences daily fatigue and gets tired from simply taking a shower and getting ready. Plaintiff takes Nuvigil, which helped when she first started taking it but doesn't much anymore. She also gets bi-weekly Plegridy injections, which gives her flu-like symptoms and injection side redness. The flu-like symptoms start approximately thirty hours after the injections and last about five days. She medicates with ibuprofen.

    She also has persistent, frequent headaches associated with nausea and sensitivity to light and sounds, which she experiences about four times a week. The headaches last between four and ten hours. She gets a monthly injection of Aimovig for her headaches, which she testified has reduced the duration but not the frequency or severity.

As for her activities of daily living, she usually watches television to pass the time of day. She cannot pay attention to a two-hour movie because she usually falls asleep. For meals, she typically does microwavable meals. For the past two years, she has hired someone to do the household chores and laundry. She uses her cane both at her house and when she leaves. She testified she cannot lift anything heavier than a half-gallon of milk. She doesn't leave her house often and usually is not gone very long due to her health. As for grocery shopping, she usually goes once a month to get out of the house and drives herself. For doctor's appointments, one of her daughters normally drives her since it is an hour and a half away. Plaintiff testified she doesn't use her phone much because of her double vision and things run together. She has issues with urinary incontinence and wears protective undergarments. She struggles with remembering things. Plaintiff testified she can sit for ten to fifteen minutes before her legs hurt. She gets up to relieve the pain and can stand or walk for about fifteen minutes before she needs to sit down again.

A Vocational Expert testified, consistent with the Dictionary of Occupational Titles, that an individual with limitations matching the ALJ's RFC finding could perform Plaintiff's past relevant work as a utilization review nurse/coordinator.

**Legal Standard**

To be eligible for benefits under the Social Security Act, Plaintiff must

5

prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

6

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If [s]he meets this burden and shows that [s]he is unable to perform [her] past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with [her] impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the

7

decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Decision of the ALJ

At Step One of the decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 31, 2018, the amended alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of MS and migraines. The ALJ noted Plaintiff's non-severe impairments, including depression. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of

8

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so the ALJ's analysis proceeded to Step Four. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations: Plaintiff cannot climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs. She is limited to no more than frequent balancing on slippery or erratically moving surfaces and she can engage in frequent handling and fingering. She cannot work at unprotected heights, around moving mechanical parts or other such hazards, and she can have no concentrated exposure to extreme heat or humidity.

At Step Four, the ALJ found Plaintiff could perform her past relevant work as a utilization review coordinator, which does not require the performance of work-related activities precluded by Plaintiff's RFC (20 C.F.R. § 404.1565). Therefore, the ALJ found Plaintiff not disabled and continuing to Step Five was not necessary.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial

9

evidence on the record as a whole. The issue here is whether the ALJ properly evaluated the medical opinion evidence in Plaintiff's RFC limitations.

## Discussion

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

**Whether the ALJ Properly Evaluated the Medical Opinion Evidence in Plaintiff's RFC Limitations**

Plaintiff argues that the RFC finding did not include the limitations supported by the medical opinion evidence of Andrew Ninichuck, M.D., and Barry Singer, M.D.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted).

10

"'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

When evaluating medical opinion evidence, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions, including those from Plaintiff's medical sources. *See* 20 C.F.R. § 404.1520c(a). The regulation requires the ALJ to evaluate the persuasiveness of medical opinions, and the most important factors the ALJ considers are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b).

The ALJ discussed the overall medical record at length, including outlining eight examinations in detail spanning from May 2019 through August 2020 that showed Plaintiff's examinations were mostly normal, and imaging did not show progression of her illness. For instance, the ALJ considered a May 2019 examination by Dr. Singer where she denied weakness, numbness, electric shocks

11

down her spine, visual loss, and double vision. She had normal bulk and tone, full strength throughout, intact sensation, normal reflexes, normal cerebellar functioning, and a normal gait. The treatment note made no mention of Plaintiff using a cane. Shortly after, in June 2019, an MRI of Plaintiff's brain revealed stable intracranial white matter lesions of multiple sclerosis. The radiologist compared the MRI to a February 2013 study and noted there was no enhancement. At an examination with Dr. Ninichuck, her neurologist, on June 25, 2019, the ALJ noted Plaintiff was alert and oriented, had intact judgment and insight, and had a normal mood and affect; again, there was no indication Plaintiff used a cane at the appointment. The ALJ additionally considered Plaintiff's November 2019 psychological consultative examination, where her gait and eye contact were normal, her speech was adequate, she was not tangential in conversation, she denied any suicidal ideations or auditory or visual hallucinations, and she was alert and oriented. The examiner noted that Plaintiff "may be having some cognitive decline, but it is not significant at this time that would meet the criteria for a neurocognitive disorder." In addition to a July 2020 examination where Plaintiff had mostly normal findings, the ALJ considered an August 2020 neurology telehealth examination that despite reports of worsening symptoms, on examination Plaintiff was alert and oriented, had fluent speech, had intact memory and recall, had intact hearing, had symmetrical facial movements, and had normal

appearing mobility. Although the ALJ concluded the objective findings fail to support Plaintiff's allegations of disabling symptoms and limitations, the ALJ acknowledged that does not mean no limitation is warranted and properly determined the RFC based on the record as a whole. For instance, because the record noted that Plaintiff has tremors, the ALJ recognized that manipulative limitations are warranted due to the evidence.

After this discussion, the ALJ thoroughly explained her considerations of the medical opinions and prior administrative medical findings. The ALJ found the state agency reviewing physician, John Duff, MD, December 2019 assessment persuasive, opining that Plaintiff could perform work at the light exertional level, with additional postural and environmental limitations such as occasionally climbing, frequently balancing, stooping, kneeling, crouching, and crawling, and avoiding concentrated exposure to wetness, vibration, and hazards. The ALJ explained Dr. Duff's finding is consistent with the record that showed few actual physical problems other than a mildly impaired gait. She also found Dr. Duff's assessment consistent with the finding of Jerry Cunningham, Psy.D. that she had normal memory, speech, eye contact, and moods. Dr. Cunningham assessed that Plaintiff had no problems understanding and remembering simple instructions, carrying out simple instructions, making judgments on simple work-related decisions, understanding and remembering complex instructions, carrying out

13

complex instructions, no problems with the ability to make judgments on complex work-related decisions, and assessed she had the capacity to complete work-like tasks within an acceptable timeframe.

As to Dr. Singer, the ALJ found his August 17, 2020, medical opinion not persuasive. Dr. Singer opined that Plaintiff's pain and symptoms would constantly interfere with her attention and concentration, assessed that she was incapable of performing even low stress jobs, could only walk for one block or less, could stand for only ten minutes at one time for a total of less than two hours each day, and could sit for no longer than ten minutes for a total of six hours, would need periods of walking every ten minutes for at least fifteen minutes, would need to shift positions, take unscheduled breaks every fifteen minutes, would need to use a cane, could occasionally lift up to ten pounds, rarely lift twenty pounds, occasionally turn head, rarely look down or up, could never stoop, crouch, or climb ladders, could rarely twist or climb stairs, would have significant limitations with reaching, handling, or fingering, could perform work with hands, fingers, and arms for only ten of the workday, would have good days and bad days, and would miss work more than four days each month. In Dr. Singer's explanation, he noted that Plaintiff's MS was progressive, and can cause daily constant and sometimes intermittent disabling fatigue, cognitive changes, vision, changes, and more. Contrary to Plaintiff's contention that the ALJ provided no explanation for finding

Dr. Singer's assessment not persuasive, the ALJ explained Dr. Singer's assessment was not consistent with the evidence or supported by his own treatment notes. For instance, the ALJ pointed out Plaintiff's June 2019 brain MRI that revealed stable intracranial white matter lesions of multiple sclerosis, with no enhancement since the previous study done several years earlier in 2013. The ALJ explained Dr. Singer stated her disease was progressive, but the MRI demonstrated that her disease had not progressed. The ALJ recognized that MS generally can cause the symptoms Dr. Singer found, but explained it is not consistent with Plaintiff's examination results that were largely normal, including those from Dr. Singer and his own clinic. As highlighted above, Plaintiff consistently showed she often had normal examination findings with no vision changes, and normal cognitive functioning. She was often alert and oriented, with fluent speech, normal memory, and normal mobility.

For Dr. Ninichuck, he assessed that Plaintiff's pain and symptoms would constantly interfere with her attention and concentration, assessed that she was incapable of performing even low stress jobs, would need unscheduled breaks every hour for thirty minutes, had significant limitations with reaching, handling, or fingering, and would be absent from work more than four days each month. The ALJ pointed out that on the day Plaintiff requested the disability forms be filled out, her examination with Dr. Ninichuck was completely normal, which is

15

inconsistent with the limitations he assessed. The ALJ found the limitations are inconsistent with the record overall, which offers no evidence or justification for absences four days each month or unscheduled work breaks every thirty minutes. Further, the ALJ found that there is no evidence that her attention and concentration would be reduced, as she did not exhibit thought disturbances or the inability to stay on task at any point, particularly during the consultative examination.

Although Plaintiff argues that the ALJ erred by attributing little weight to the opinions of Dr. Ninichuck and Dr. Singer, the ALJ provided legitimate reasons for discounting those opinions and complied with the regulation by documenting consideration of both of the mandatory factors of supportability and consistency for each of the opinions Plaintiff places at issue. See *Wildman,* 596 F.3d at 969 (ALJ did not err by declining to include in RFC limitations based on claimant's allegations that he found not credible, or limitations from opinions he properly disregarded); *See also, Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) ("[A]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.").

16

The ALJ properly evaluated the medical opinion evidence at issue when considering the record as a whole. In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson v. Barnhart,* 361 F.3d at 1070 (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011). As long as substantial evidence in the record supports the ALJ's decision, the Court may not reverse it because substantial evidence may also exist to support a contrary outcome. See *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 23rd day of September, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE